IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**BETTY BELL**                                                                                         **PLAINTIFF**

   V.                                                                **CAUSE NO: 1:05-cv-293-EMB**

**THE COMMISSIONER OF SOCIAL SECURITY**                         **DEFENDANT**

**MEMORANDUM OPINION**

Plaintiff, Betty Bell, seeks judicial review pursuant to Section 405(g) of the Social Security Act (the "Act") of an unfavorable final decision of the Commissioner of the Social Security Administration (the "Commissioner"), regarding her applications for disability benefits under Title II and Supplemental Security Income ("SSI") under Title XVI. The parties have consented to entry of final judgment by the undersigned United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Fifth Circuit. Having duly considered the briefs of the parties, the administrative record and the applicable law, the Court rules as follows.

**Administrative Proceedings**

Plaintiff filed applications for disability benefits under Title II and SSI benefits under Title XVI, respectively, on January 1, 2004, and December 11, 2003, alleging a disability onset date of August 30, 2003 (Tr. 49- 52, 293- 99). The applications were denied initially and on reconsideration (Tr. 22-32, 299, 301).

In a hearing decision dated June 27, 2005, an administrative law judge ("ALJ") found that Plaintiff was not disabled as defined in the Act (Tr. 13-21). Plaintiff filed a request for review of that decision, which the Appeals Council declined on October 29, 2005 (Tr. 5-8). The

ALJ's hearing decision is now ripe for review under section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## Facts

Plaintiff was born January 20, 1966 (Tr. 49) and was 39 years of age at the time of the hearing decision on June 27, 2005 (Tr. 21). She completed the eleventh grade (Tr. 83). Plaintiff has previous work experience as cashier and clothing inspector/tagger (Tr. 78). Plaintiff alleged that she could not work due to depression, anxiety, high blood pressure and arthritis (Tr. 77). She was five feet and seven inches tall and weighed 265 pounds (Tr. 76). After review and evaluation of the medical evidence of record, the subjective testimony at the hearing (Tr. 317-35) and the testimony of a vocational expert ("VE") (Tr. 335-41), the ALJ found Plaintiff not disabled (Tr. 13-21). Contrary to Plaintiff's allegation of disability, the ALJ found that she had the residual functional capacity ("RFC") to perform work that did not require attention to details or complicated job tasks (Tr. 20). The ALJ also found that Plaintiff could maintain concentration and attention at least two hours at a time (Tr. 20).

## Standard of Review

This Court reviews the Commissioner's/ALJ's decision only to determine whether it is supported by "substantial evidence" on the record as a whole and whether the proper legal standards were applied. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). Furthermore, in applying the substantial evidence standard, this Court scrutinizes the record to determine whether such evidence is present. This Court will not re-weigh the

evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Id.*, citing *Haywood v. Sullivan*, 888 F.2d 1463, 1466 (5th Cir. 1989); *see also Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001).

## **Law**

To be considered disabled and eligible for benefits, Plaintiff must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 to 404.1599 & Appendices, §§ 416.901 to 416.998 1995. The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity.[1] *Id.* §§ 404.1520, 416.920; *Greenspan v. Shalala*, 38 F.3d 232, 236

---

[1] The five-step analysis requires consideration of the following:

First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled. *Id.* §§ 404.1520(c), 416.920(c).

Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence. *Id.* §§ 404.1520(d), 416.920(d).

Fourth, if a determination of disabled or not disabled cannot be made by these

3

(5th Cir. 1994); *Moore v. Sullivan*, 895 F.2d 1065, 1068 (5th Cir. 1990). The five-step inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

The claimant has the burden of proof under the first four parts of the inquiry. *Id*. If he successfully carries this burden, the burden shifts to the Commissioner to show that other substantial gainful employment is available in the national economy, which the claimant is capable of performing. *Greenspan*, 38 F.3d at 236; *Kraemer v. Sullivan*, 885 F.2d 206, 208 (5th Cir.1989). When the Commissioner shows that the claimant is capable of engaging in alternative employment, "the ultimate burden of persuasion shifts back to the claimant," *Id*.; *accord Selders*, 914 F.2d at 618.

The Court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability;

---

steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated. If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled. *Id*. §§ 404.1520(e), 416.920(e).

Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy. If the claimant cannot meet the demands, he or she will be found disabled. *Id*. §§ 404.1520(f)(1), 416.920(f)(1). To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns. When the findings made with respect to claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled. *Id*. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 (1994)("Medical-Vocational Guidelines").

4

and (4) his age, education, and work history," *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995). "The Commissioner, rather than the courts, must resolve conflicts in the evidence." *Id*.

### Analysis

Plaintiff identifies three issues for this appeal: 1) whether the Commissioner erred in ignoring the effect of Plaintiff's obesity, degenerative arthritis, headaches and other symptoms on Plaintiff's RFC; 2) whether the Commissioner erred in adopting the VE's testimony regarding Plaintiff's past relevant work as a "tagger;" and 3) whether the Commissioner erred in "selectively crediting, without explanation, portions of the opinion of a single state agency non-examining psychologist" over the opinions of two other physicians retained by the Commissioner and Plaintiff's treating physician.

*Issue One*

Plaintiff argues the Commissioner erred in failing to consider the effects of her other impairments, namely morbid obesity, degenerative arthritis myalgias and headaches, on her RFC. Pl.'s Br. 9-13. The Commissioner merely responds that the ALJ "chronicled Plaintiff's medical records" and agrees that the ALJ failed to analyze "why he did not credit indications from doctors that Plaintiff had myalgias and assorted pains." Def.'s Br. 14.

In his decision, the ALJ stated Plaintiff had no exertional limitations and assigned an RFC based solely on her mental abilities (Tr. 18). Yet, the medical evidence of record consistently shows diagnoses of morbid obesity, arthritis, myalgias and headaches. For instance, Plaintiff was treated for left knee pain in early 2002 by Dr. S. V. Patel (Tr. 169-70). At the time, she weighed 286 pounds (Tr. 169). Dr. Patel diagnosed her with left knee pain which he stated was possibly related to her morbid obesity (Tr. 169). A knee X-ray performed on February 28,

2002, showed no abnormalities of the left knee but a possible small joint effusion (Tr. 159).

Due to complaints of generalized aching, muscle spasms and soreness, Plaintiff was seen by Dr. P. Morris Parsons on June 14, 2002 (Tr. 178). Examination revealed her blood pressure was elevated at 150/100 and tenderness along both feet (Tr. 178). She was diagnosed with generalized myalgia and hypertension (Tr. 178).

On October 18, 2003, Plaintiff was treated at the Choctaw County Hospital emergency room for headaches and chest pain (Tr. 146-47). She was diagnosed with anxiety, depression, atypical chest pain and headache (Tr. 146-47).

Over the following weeks, Dr. Hays examined Plaintiff for emergency room followup (Tr. 139-141). On October 20, 2003, Ms. Bell was diagnosed with depression, gastroesophageal reflux, headache and morbid obesity (Tr. 139-141). She was prescribed Zoloft and Clonazepam and was referred for counseling (Tr. 141). Plaintiff again reported headaches and occasional attacks on November 20, 2003 (Tr. 139). She reported being in a daze and shaking (Tr. 139). She was diagnosed with hypertension, obesity, and depression (Tr. 139). Her Clonazepam was changed to Trazadone, an antidepressant, and her Zoloft and Toprol XL were refilled (Tr. 139).

Dr. Jim Adams examined Plaintiff on February 20, 2004 at the request of the state disability agency (Tr. 193-195). Plaintiff reported a history of severe depression and anxiety for many years (Tr. 193). She had frequent chest pain and was fearful of a heart attack (Tr. 193). Dr. Adams observed that Plaintiff was severely overweight (Tr. 193). Examination revealed her weight to be 269 pounds and her blood pressure was 160/102 (Tr.194). Plaintiff rose with moderate difficulty from a lying position in a sit-up fashion (Tr. 195). There was mild crepitus in both knee joints and reflexes in her lower extremities were undetectable (Tr. 195). Dr. Adams

6

stated that Ms. Bell was "morbidly obese" and was developing degenerative joint disease of the weight bearing joints, which limited her standing and caused pain with prolonged standing at work (Tr. 195). Her blood pressure was elevated and her chest pain she described mixed symptoms of angina pectoris and chest wall pain (Tr. 195).

On April 29, 2004, Dr. Sidney H. Prosser examined Plaintiff for pain, depression and anxiety (Tr. 172- 173). Plaintiff reported generalized pain and aching, vision problems, weakness, depression and anxiety (Tr. 172). Examination revealed she was "massively obese" and all of her muscles were sore (Tr. 172). She was diagnosed with generalized myalgias with fever, rule out inflammatory arthritis, and chronic anxiety and depression (Tr. 172). Dr. Prosser recommended referral to a rheumatologist (Tr. 172-73).

On May 21, 2004, Dr. Prosser reexamined Plaintiff for pain (Tr. 283-284). He noted Plaintiff was doing well except for arthritis pains (Tr. 283). She was referred for lab work, which showed an elevated sed rate of 21 (Tr. 284).

From September through October 2004, Dr. Prosser treated Plaintiff for joint and muscle pain (Tr. 278-280). On September 23, 2004, she was diagnosed with morbid obesity, chronic myalgia, joint pain and hypertension (Tr. 280). She was given an injection of Decadron with DepoMedrol. Dr. Prosser advised referral to a rheumatologist, which Plaintiff said she could not afford (Tr. 280). On October 26, 2004 Plaintiff reported headaches and photosensitivity (Tr. 278). She was diagnosed with chronic headache, chronic myalgia, joint pain, morbid obesity, anxiety and depression (Tr. 278).

The Commissioner is required to consider each of the claimant's impairments, both individually and in combination, in determining the claimant's capacity for substantial gainful

7

activity. *See Scott v. Heckler*, 770 F.2d 482, 486 (5th Cir. 1985). In light of the foregoing medical evidence in this case, the Court finds the ALJ failed to properly consider all of Plaintiff's impairments individually and in combination in determining her ability to perform substantial gainful activity. Accordingly, the case should be remanded to the Commissioner for a redetermination of Plaintiff's ability to perform substantial gainful activity in light of *all* of her impairments and symptoms. Specifically, the ALJ should properly determine the severity of all of Plaintiff's alleged impairments and perform a "function-by-function assessment" of Plaintiff's RFC in terms of exertional levels of work. *See* 20 C.F.R. § 404.1545(b) and Soc. Sec. R. 96-8p.

### *Issue Two*

Plaintiff next takes issue with the ALJ's acceptance of the VE's characterization of the nature of her past relevant work as a "tagger." The VE testified that Plaintiff's RFC did not preclude performance of her past relevant work as a "tagger" (Tr. 338-39). Because the Court finds the case should be remanded for redetermination of Plaintiff's ability to work in light of all of her impairments as noted above, there is no need to deal with this issue here.

### *Issue Three*

Lastly, Plaintiff essentially charges that the Commissioner erred in selectively crediting only a portion of the opinion of one state agency non-examining psychologist, Dr. Scates, over the opinions of other physicians, namely Drs. Whelan, Hardy (Plaintiff's treating physician) and Adams. Pl.'s Brief 16-20. Plaintiff further complains that the Commissioner "failed to articulate adequate reasons for not crediting the opinions of the treating physician and medical sources." *Id*. at 17.

At the request of the Commissioner, Dr. Jim Adams examined Plaintiff on February 20,

2004 (Tr. 193-196). Dr. Adams noted that plaintiff was morbidly obese and was "developing degenerative joint disease of the weight-bearing joints" which limited her ability to stand and caused pain (Tr. 195).

Dr. Michael Whelan examined Plaintiff on February 26, 2004. (Tr. 197-200). He found Plaintiff was depressed due to financial stresses and marital problems and "probably" had some amount of difficulty in maintaining attention and concentration at times (Tr. 199). Dr. Whelan also seemed to think Plaintiff had symptoms of panic disorder (Tr. 199). He further indicated Plaintiff would have some trouble getting along with supervisors due to her emotional instability and low tolerance for stress (Tr. 199).

In April 2004, Sharon H. Scates, Ph.D., a psychologist, opined that Plaintiff was moderately limited in her ability to, *inter alia*, understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, sustain an ordinary routine without supervision, accept instructions and respond to criticism from supervisors, get along with co-workers and respond appropriately to changes in the work setting (Tr. 215-16).

On May 5, 2005, Plaintiff's treating psychiatrist, Dr. Robert Hardy, and her therapist, Dusty Adams, submitted a "Mental Impairment Questionnaire" at the request of Plaintiff's attorney (Tr. 286-292). Their responses indicated that Plaintiff suffered from, *inter alia*, poor memory, social withdrawal or isolation, recurrent panic attacks, obsessions or compulsions, persistent irrational fears and difficulty thinking or concentrating (Tr. 286-87). It was further indicated that Plaintiff exhibited marked difficulties in maintaining social functioning and marked restriction in activities of daily living (Tr. 287). There were also notations of marked

9

limitations with respect to Plaintiff's ability to remember work-like procedures, sustain an ordinary routine without special supervision, accept instructions, respond appropriately to criticism from supervisors and deal with normal work stress (Tr. 288-91).

It is well settled that "[t]he opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability ." *Newton v. Apfel,* 209 F.3d 448, 453 (5th Cir. 2000) (citing *Legget v. Charter*, 67 F.3d 558, 566 (5th Cir.1995)). However, the ALJ may reject or accord little weight to the opinion of a treating physician if after a detailed analysis it is determined that the treating physician's opinion is unreliable. *See id.* at 456. And, the ALJ may reject the opinion of any physician, when the evidence supports a different conclusion or when an opinion is brief, conclusory or unsupported by acceptable techniques. *Spellman v. Shalala*, 1 F.3d 357, 354-65 (5th Cir.1993).

First, as regards the medical opinion of Dr. Adams, consistent with the above finding, on remand the ALJ shall properly consider all the evidence regarding Plaintiff's physical impairments.

As regards the opinions of the other physicians singled out by Plaintiff, it should be pointed out that Plaintiff makes no real argument that the ALJ failed to attribute proper weight to the opinion of Dr. Hardy, Plaintiff's treating psychiatrist. Indeed, the ALJ failed to attribute controlling weight to Dr. Hardy's opinion because Plaintiff had seen Dr. Hardy only two times before her case was closed (Tr. 17); Dr. Hardy's opinion was inconsistent with his own records (Tr. 19); and Dr. Hardy's opinion was in conflict with other evidence of record (Tr. 19). Instead, Plaintiff complains more about the fact that the ALJ failed to express why he refused to accept some portions of the opinions of the other non-treating physicians.

The Fifth Circuit has declined to adopt the rule followed in the Third Circuit "that an ALJ must articulate specifically the evidence that supported his decision and discuss the evidence that was rejected." *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir.1994). The ALJ in this case cited adequate reasons for rejecting the opinion of Plaintiff's treating physician. He was not required to articulate reasons for rejecting only some portions of the opinions of the other non-treating physicians. Accordingly, this assignment of error is without merit.

## Conclusion

Based on the foregoing, this case is due to be reversed and remanded to the Commissioner for further proceedings not inconsistent with this opinion.

**THIS**, the 30th day of March, 2007.

/s/ Eugene M. Bogen
**U. S. MAGISTRATE JUDGE**